# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | |
|---|---|
| WILBERT CHARLES MANNING | CIVIL ACTION NO. 12-2563-P |
| VERSUS | JUDGE HICKS |
| DEPUTY NUNNERY, ET AL. | MAGISTRATE JUDGE HORNSBY |

### REPORT AND RECOMMENDATION

This matter has been referred to the undersigned magistrate judge for review, report and recommendation in accordance with 28 U.S.C. §636(b)(1)(B).

### STATEMENT OF CLAIM

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff Wilbert Charles Manning ("Plaintiff"), pursuant to 42 U.S.C. § 1983.  This complaint was received and filed in this court on September 22, 2012.  Plaintiff is incarcerated at the Caddo Correctional Center in Shreveport, Louisiana, and claims his civil rights were violated by prison officials.  He names numerous defendants including Deputy Nunnery, A.L. Dinkins, Jr., Rick Farris, Corporal Moore, Corporal Carter, K. McCullin, Deputy Johnson, Unknown Defendants, Deputy Butler, Niki Boyd, Andre, Deputy Dunn, Sgt. Player, Commander Wyche, Sgt. Bedford, Deputy Wright, Mrs. Miller, Mrs. Lori, Dr. Flounoid, Jill Key, Unknown Medical Staff, Mental Health Staff, Tori Griffith, Dr. Kolon, Dr. Dulley, Sgt. Follmtzer, Sgt. Acklon, Unknown Emergency Response Team Members, Captain Leech, Nurse Donna, Nurse Lisa, Unknown Nurse,

Nurse Shelia, Nurse Lana, Nurse Sumlin, Curtis Samuel, Deputy Ashcroft, Deputy Grimes, Deputy Price, Deputy Stafford, Deputy Harthorn, Zachary Thomas, E. Ford, Deputy Fair, Captain Douglas, Medical Tech Kendrick, Nurse Larry, Nurse Yolanda, Speed, Shine, Mongomery Robinson, Julius Jackson, Medical Tech Stacy, Deputy Reich, Sarah Piggly, and Sgt. Roeback as defendants.

Plaintiff claims that on August 29, 2012, he and another inmate were involved in a physical altercation.  He claims that prior to the physical altercation, he and the inmate were arguing.  He claims nothing was done to separate them prior to the physical altercation.  He also claims Deputy McCullin failed to break up the fight with pepper spray before the emergency response team arrived.

Plaintiff claims he was taken to the infirmary after the fight and his jaw was x-rayed.  He claims he was then transported to LSU Medical Center because his jaw was broken on both sides.  He claims the medical staff ordered pain medication and ibuprofen for his jaw.

Plaintiff claims he did not always receive his medication when needed and as a result, he suffered pain for almost the entire month of September 2012.  He claims there were times when the deputies turned off his call button after he pressed it.  He claims that because of his jaw injury, he could not yell for the deputies.  He claims he pressed his call button so the deputies would take him to the infirmary to receive his pain medication.  He claims that when the deputies turned off his call button, he suffered until one of them made rounds or performed a tier check.

Plaintiff claims that on September 3, 2012, Deputy Nunnery ordered him to turn his back when he used the bathroom.  He claims she then threatened to lock him down. He claims he pressed his call button so he could speak with the male deputy and ask him to call the medical department.  He claims Deputy Nunnery turned off his call button. He claims he suffered great pain.  The documents provided by Plaintiff show that he went to the infirmary two times on this date [Doc. 10, p. 9].

Plaintiff claims that when he filed a grievance in the administrative remedy procedure regarding his call button, it was rejected.

Plaintiff claims he could not chew solid foods because of his broken jaw.  He claims the doctor at LSU Medical Center ordered that he receive a soft diet.  He claims the kitchen staff failed to comply with the doctor's order because they did not provide a liquid diet.  He claims he was served food that included crackers, meat, bread, oranges, and potato chips.

Plaintiff claims he was housed in the mental health unit under false pretenses.  He claims he was held in the mental health unit for an act he committed in February and had already served his 45- day sentence.  He claims he was subjected to double jeopardy. He also claims he was not suicidal, homicidal, or crazy.

Plaintiff claims that on November 4, 2012, Defendants accused him of sleeping inside his mattress and trying to harm himself.  He claims he was placed in the mental health unit in a rubber foam cell without his mattress, smock, and dentures because he filed actions in this court and exposed the prostitution ring at Caddo Correctional Center.

He also claims he was moved to the mental health unit because he is HIV positive.  He claims it was cold and he slept on the floor.  He claims he did not have running water or a toilet in his cell.  He claims that there were times when he was not taken to the bathroom in time.  He claims he had to drink water from a sink after another inmate put his mouth on the faucet.  He claims he was not allowed to have a cup in his cell.  He claims he was only allowed to brush his teeth one time a day.  He claims the lights were turned off at random times for no reason.  He claims he is the last one to get a haircut and a shave.  He also claims he is the last one to have his cell cleaned.  He claims the staff has nicknames for him.  He claims he was fed cat food and the deputies played with his food.

Plaintiff claims he is always escorted by the emergency response team so that he will not witness the actions of the prostitution ring.  He claims the ERT members even stay in the room during most of his sick calls.  He also claims there is a secret tunnel system at the prison which hides the activities of the prostitution ring from the security cameras.  Plaintiff claims he fears for his safety because he made known to officials the prostitution ring at Caddo Correctional Center.

Plaintiff claims he was released to the prison on the same day as his jaw surgery.  He claims he was denied medical treatment and medication after his jaw surgery.  However, he admits he received medication in September and October of 2012.  He claims he received the pain medication every six hours and the ibuprofen every two to four hours, but sometimes every six hours.  He claims his incision was not checked on

a regular basis.  He admits that in October of 2012, he was examined by a doctor and the nurse removed the staples from his chin.

Plaintiff claims that on October 15, 2012, he was seen in the infirmary by a nurse because of pain in his mouth, shoulder, back, knee, and elbow.  He also claims the pain medication prescribed after his surgery needed to be refilled.  He claims the nurse ordered ibuprofen for him.

Plaintiff claims that on December 11, 2012, he was seen in the infirmary by a member of the medical staff because of pain in his mouth, shoulder, elbow, knee, and lower back.  He claims the nurse reported him to Deputy Moore because he repeatedly made the same complaints.  He claims he and Deputy Moore had words and he was escorted from the medical unit.  He claims he received no medical treatment.

Plaintiff claims that on March 13, 2013, he was seen by a nurse in the infirmary because of pain in his mouth, shoulder, right elbow, right knee, and lower back.  He claims he was not examined.  He claims the nurse told him that he would be placed on the doctor's list and that he would speak to Director Wright about his complaints.

Plaintiff claims that on April 25, 2013, he was seen in the infirmary by a member of the medical staff because of pain in his mouth, lower back, shoulder, knee, and elbow. He claims nothing was done for his complaints.

Plaintiff admits that on May 6, 2013, he was examined by a nurse in the infirmary for blood pressure issues.  He claims he was not given medication.  Plaintiff admits that on May 7, 2013, he was examined by a nurse in the infirmary regarding prescriptions

ordered by Dr. Nelson for pain, sinus problems, and blood pressure problems.

Plaintiff claims that on June 10, 2013, he was seen in the infirmary by a member of the medical staff because of pain in his elbow, lower back, shoulder, knee, and mouth. He claims he was told that the nurse could not refer him to LSU Medical Center or prescribe medication for his pain. He claims he was placed on the doctor's list. Plaintiff claims he made another sick call for the same problems. He claims he informed the medical staff that he was having problems chewing because his plate was not fitting properly and his mouth was sore. He claims he requested pain medication. He claims the nurse told him that he was not authorized to prescribe pain medication and would place him on the doctor's list.

Plaintiff claims that on July 3, 2013, he was seen by the medical staff in the infirmary for the same problems. He claims he was placed on the doctor's list. Plaintiff claims that on July 28, 2013, he was seen by a nurse for sinus problems. He claims he was prescribed medication for six days.

Plaintiff claims that on May 4, 2014, he was seen by a nurse in the infirmary for the same problems. He claims the nurse told him he was not authorized to give him pain medication. He admits the nurse took his blood pressure and placed him on the doctor's list. Plaintiff claims that on May 6, 2014, he was seen by a nurse in the infirmary for the same issues. He claims the nurse took his blood pressure and placed him on the doctor's list. Plaintiff claims that on May 24, 2014, he was seen by a nurse in the infirmary for the same issues. He claims the nurse took his blood pressure and placed him on the

doctor's list.

Plaintiff claims that on June 11, 2014, he was seen in the infirmary by a member of the medical staff because of pain in his mouth, shoulder, elbow, knee, and lower back. He claims he was told a note would be left for Director Wright. Plaintiff claims that on June 12, 2014, he was seen by Dr. Nelson for the pain in his shoulder, mouth, knee, back, and elbow. He claims Dr. Nelson told him that the pain in his knee, back, and shoulder was caused by arthritis and old age. He claims Dr. Nelson ordered ibuprofen for one week and told him he would refer him to LSU Medical Center for his mouth pain.

Plaintiff claims that on July 2, 2014, he was seen by a nurse in the infirmary because of the same issues. He claims the nurse took his blood pressure and ordered a six day prescription of ibuprofen and sinus medication. Plaintiff claims on July 8, 2014, he was examined in the infirmary by a member of the medical staff for his blood pressure, mouth, knee, back and shoulder problems. He claims he was not prescribed medication.

Plaintiff claims he was denied a sleeve for his knee and medical treatment for his elbow and minor aches and pains. He claims his problems worsened because he was denied medical treatment. He claims the medical staff told him that there was nothing wrong with his left hip and right shoulder even though he is in constant pain. He claims he was denied pain medication stronger than ibuprofen. Plaintiff claims he was housed in the mental health unit and not the medical unit. He claims he was not taken to LSU

Medical Center for his appointments.   He claims he only refused to go to his appointment one time.  Plaintiff claims he should have received additional x-rays because of jaw pain and improperly fitting dentures.  He claims that after he made a sick call, he did not see the doctor sometimes for two to three weeks because of the patient backlog.  He claims he was denied doctor visits because he did not participate in the prostitution ring and reported the illegal activities.  He claims he was scheduled for a second jaw surgery, but he refused the surgery because he feared the medical staff would kill him during the surgery because he exposed the prostitution ring at Caddo Correctional Center.  He claims he did not receive medical attention after he refused the second surgery.

Plaintiff complains that he was charged $10.00 for sick calls and $5.00 for prescriptions.

Plaintiff claims that on October 23, 2012, Deputy Bergon had him placed in a restraint chair for two hours.  He claims he was handcuffed behind his back with straps across his waist, mid-section, and chest.  He claims his feet were also restrained to the chair.

Accordingly, Plaintiff seeks monetary compensation, a transfer to another facility, and the termination of Defendants.

## LAW AND ANALYSIS

**Failure to Protect**

Plaintiff claims that on August 29, 2012, he and another inmate were involved in

a physical altercation.  He claims that prior to the physical altercation, he and the inmate were arguing.  He claims nothing was done to separate them prior to the physical altercation.  He also claims Deputy McCullin failed to break up the fight with pepper spray before the emergency response team arrived.

Under the Eighth Amendment, prison officials are required to provide humane conditions of confinement, ensuring that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of inmates. See Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994).  "It is not, however, every injury suffered by a prisoner at the hands of another that translates into constitutional liability for prison officials."  Farmer, 114 S.Ct. at  1977.  Instead, to prevail on a claim based on a failure to protect, the inmate must show that he is incarcerated "under conditions posing a substantial risk of serious harm" and that the defendant prison officials were deliberately indifferent to the inmate's health and safety.  Id. at 1977-78.  The test for deliberate indifference is a subjective one.  Thus, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of fact from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 1979.

In this case, after a thorough review of Plaintiff's complaint, read in a light most favorable to him, the court finds that the facts alleged do not support a finding of

deliberate indifference. Plaintiff does not allege that he was personally subject to an excessive risk of attack, nor does he allege prison officials were aware of any excessive risk posed him by the attacking inmate prior to the actual attack. It is not uncommon for two inmates to argue in a prison setting. Plaintiff does not allege that there was a history known to Defendants of prior incidents between he and the other inmate. Furthermore, Plaintiff admits that the emergency response team was called to break up the fight. As such, Plaintiff has not shown that Defendants disregarded a risk to his safety by failing to take reasonable measures to abate it. Farmer, 114 S.Ct. 1970. Accordingly, the actions on the part of the prison officials do not evidence an attitude of deliberate indifference. Accordingly, Plaintiff's claims should be dismissed with prejudice as frivolous.

**Denial of Medical Treatment**

Plaintiff claims he was released to the prison on the same day as his jaw surgery. He claims he was denied medical treatment and medication after his surgery. Plaintiff claims that after his jaw was broken on August 29, 2012, he suffered pain for most of September of 2012, because he had trouble receiving his ibuprofen and pain medications. Plaintiff claims that his call button was turned off after he pressed it for the deputies to take him to the infirmary to receive his pain medication. He claims he would then suffer until a deputy made rounds or performed a tier check. He claims his incision was not checked on a regular basis. Plaintiff claims the kitchen staff failed to provide him with a soft diet as ordered after his surgery because they do not provide

liquid diets.  He claims he was denied medical treatment for his back, knee, shoulder and mouth pain.  He claims he was denied a sleeve for his knee.  He claims he was denied pain medication stronger than ibuprofen.  He claims he was not taken to LSU Medical Center.  He claims he should have received additional x-rays.

Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law.  The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged denial of or inadequate medical care is the Eighth Amendment prohibition against cruel and unusual punishment.

The lack of proper inmate medical care rises to the level of a constitutional deprivation under the Eighth Amendment of the United States Constitution only if the evidence shows that the prison officials showed "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976); See also Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978 (1994).  It is only deliberate indifference, "an unnecessary and wanton infliction of pain" or an act "repugnant to the conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment.  Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292; See also Gregg v. Georgia, 428 U.S. 153, 96 S. Ct. 2909 (1976).  Further, the plaintiff must establish that the defendants possessed a culpable state of mind.  See Wilson v. Seiter, 501 U.S. 294, 297-302, 111 S. Ct. 2321, 2323-27 (1991); Farmer, 511 U.S. at 838-47, 114 S. Ct. at 1979-84.  A delay in medical care will violate the Eight Amendment only if the delay

is based on deliberate indifference and results in substantial harm.  Mendoza v. Lynaugh,
989 F.2d 191, 195 (5th Cir. 1993).  In addition, disagreement with the diagnostic
measures or methods of treatment afforded by prison officials does not state a claim for
Eighth Amendment indifference to medical needs.  See Norton v. Dimazana, 122 F.3d
286, 292 (5th Cir. 1997).

In this case, after a thorough review of Plaintiff's complaint, read in a light most
favorable to him, the court finds that the facts alleged do not support a finding of
deliberate indifference to serious medical needs.  To the contrary, the record
demonstrates that Defendants were attentive to the medical needs of Plaintiff.  It has
been consistently held that an inmate who has been examined by medical personnel fails
to set forth a valid showing of deliberate indifference to serious medical needs.  Norton
v. Dimazana, 122 F.2d 286, 292 (5th Cir. 1997);  Callaway v. Smith County, 991 F.
Supp. 801, 809 (E.D. Tex. 1998); Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985);
Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

Plaintiff admits he received medication in September and October of 2012.  He
admits he received the pain medication every six hours and the ibuprofen every two to
four hours, but sometimes every six hours.  Plaintiff admits that in October of 2012, he
was examined by a doctor and the nurse removed the staples from his chin.  Plaintiff
admits that on October 15, 2012, he was seen by a nurse who ordered ibuprofen for him.
Plaintiff admits that on December 11, 2012, he was seen in the infirmary by a member
of the medical staff.  He admits that on March 13, 2013, he was seen in the infirmary by

a member of the medical staff and placed on the doctor's list.  He admits that on April 25, 2013, he was seen in the infirmary by a member of the medical staff.  Plaintiff admits that on May 6, 2013, he was examined by a nurse in the infirmary for blood pressure problems.  He admits that on May 7, 2013, he was examined by a nurse in the infirmary regarding prescriptions ordered by Dr. Nelson for pain, sinus problems, and blood pressure problems.  He admits that on June 10, 2013, he was seen in the infirmary by a member of the medical staff and placed on the doctor's list.  He admits he was seen again in the infirmary by a member of the medical staff and was placed on the doctor's list.

Plaintiff admits that on July 3, 2013, he was seen in the infirmary by a member of the medical staff and was placed on the doctor's list.  He admits that on July 28, 2013, he was seen by a nurse for sinus problems and prescribed medication.  Plaintiff admits that on May 4, 6, and 14 of  2013, he was seen in the infirmary by a nurse who took his blood pressure and placed him on the doctor's list.  He admits that on June 11, 2014, he was seen in the infirmary by a member of the medical staff and a note was left for Director Wright.  He admits that on June 12, 2014, he was seen by Dr. Nelson who ordered ibuprofen for him and referred him to LSU Medical Center for his mouth pain.  Plaintiff admits that on July 2, 2014, he was seen by a nurse in the infirmary who took his blood pressure and ordered ibuprofen and sinus medication for him.  He admits that on July 8, 2014, he was examined by a member of the medical staff.

Plaintiff's complaint is devoid of factual allegations that would tend to show

Defendants acted with a culpable state of mind or that their actions were "unnecessary and wanton."  Plaintiff does not allege how the delay in receiving medication or doctor visits was based on deliberate indifference and resulted in any substantial harm.

Plaintiff's allegations, if accepted as true, may amount to a state law claim for negligence, a tort.  However, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of Defendants do not rise to the level of a constitutional tort.  See Daniels v. Williams, 474 U.S. 327, 329-30, 106 S. Ct. 662, 664 (1986); Estelle, 429 U.S. at 106, 97 S. Ct. at 292; Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988).  The fact that Plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act.  See Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985).  Prisoners are not constitutionally entitled to the best medical care that money can buy.  See Mayweather v. Foti, 958 F.2d. 91 (5th Cir. 1992).  Accordingly, Plaintiff's claim should be dismissed with prejudice as frivolous.

**Medical Fee**

Plaintiff complains that he was charged $10.00 for sick calls and $5.00 for prescriptions.  Plaintiff does not have a constitutional right to free medical care.  Hutchinson v. Belt, 957 F.Supp. 97 (W.D. La. 1996).   Furthermore, Plaintiff does not allege that he was denied medical treatment or medication because he could not pay the fee.  Accordingly, Plaintiff's claim should be dismissed with prejudice as frivolous.

**Administrative Remedy Procedure**

Plaintiff complains his grievance was rejected in violation of his constitutional rights.  Inmates do not have a constitutionally protected right to a prison administrative grievance procedure.  See Oladipupo v. Austin, et al., 104 F.Supp.2d 626 (W.D. La. 2000); Brown v. Dodson, et al., 863 F.  Supp. 284 (W.D. Va. 1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991).  A prison official's failure to comply with a state administrative grievance procedure is not actionable under Section 1983 because a state administrative grievance procedure does not confer any substantive constitutional right upon prison inmates.  Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), cert. denied, 488 U.S. 898, 109 S.Ct.  242, 102 L.Ed.2d 231.  State administrative grievance procedures are separate and distinct from state and federal legal procedures.  Thus, a prison official's failure to comply with state administrative grievance procedures does not compromise an inmate's right of access to the courts.  Flick, supra.

**Classification**

Plaintiff claims he was housed in the mental health unit under false pretenses. This is not a claim that this court can resolve.  Federal courts should not, under the guise of enforcing constitutional standards, assume the superintendence of state prison administration.  See Jones v. Diamond, 636 F.2d 1364, 1368 (5th Cir. 1981) (en banc) (overruled on other grounds).  This court accords state prison administrators wide-ranging deference to adopt and to execute policies and practices that are needed to maintain and preserve order, discipline and security in prison.  See Bell v. Wolfish, 441

U.S. 520, 547 (1979).

The classification of prisoners is such a practice that is left to the discretion of prison officials.  See McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir. 1990).  "It is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status'." McCord, 910 F.2d at 1250 (quoting Wilkerson v. Maggio, 703 F.2d 909 (5th Cir. 1983)).

In Louisiana, the classification of prisoners is the duty of the Department of Corrections and an inmate, such as Plaintiff, has no right to a particular classification. In addition, "speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests." Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995) (citing Meachum v. Fano, 427 U.S. 215, 299 n.8, 96 S. Ct. 2532, 2540 n.8 (1976)).  The prison officials' decision to house Plaintiff in the mental health unit and the resulting consequences of such decision do not give rise to constitutionally protected liberty interests.

**Conditions of Confinement**

Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law.  The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged unconstitutional conditions of confinement is the Eighth Amendment prohibition against cruel and unusual punishment.  Under the Eighth Amendment, prison officials are required to provide humane conditions of

confinement, ensuring that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee safety of inmates.  See Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994).

An Eighth Amendment claim has two required components. See Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324 (1991).  First, the deprivation alleged must be sufficiently serious. See id., 111 S. Ct. at 2324.  "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave" to constitute cruel and unusual punishment. Id., 111 S. Ct. at 2324 (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399 (1981)).  Furthermore, this court should consider the duration and the totality of the specific circumstances that constituted the conditions of Plaintiff's confinement.  Palmer v. Johnson, 193 F.3d 346 (5th Cir. 1999).  Second, the prison official must have acted with a sufficiently culpable state of mind. See id. at 305, 111 S. Ct. at 2328; Farmer, 511 U.S. at 838, 114 S. Ct. at 1979.  In prison condition of confinement cases, that state of mind is deliberate indifference, which the Supreme Court defined as knowing of and disregarding an excessive risk to inmate health or safety.  See id., 114 S. Ct. at 1979.

After considering the totality of the specific circumstances that constitute the conditions of Plaintiff's confinement, this court finds that the facts alleged do not support a finding that Defendants' conduct was sufficiently harmful enough to deprive him of life's basic necessities.  See Wilson, 501 U.S. at 298, 111 S. Ct. at 2324.  The court finds that Plaintiff's claims standing alone, simply do not rise to the level of cruel

and usual punishment as defined by the jurisprudence, because with regard to each of these claims, Plaintiff has failed to allege that he sustained any harm or injury as a result of his exposure to the complained of conditions.   Thus, the court does not consider the deprivation alleged to be sufficiently serious.

Accordingly, the conditions alleged do not rise to the level of cruel and unusual punishment.  Plaintiff's claims lack an arguable basis in law and should be dismissed with prejudice as frivolous.

**Retaliation**

Plaintiff claims he was retaliated against by Defendants because he exposed a prostitution ring and reported the illegal activities.  To state a claim of retaliation, an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident--such as the placement in the mental health unit and the delay in seeing the doctor --would not have occurred. Woods v. Smith, 60 F.3d 1161 (5th Cir. 1995), citing Mt. Healthy City School Board District Bd. Of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

The retaliatory motive alleged by Plaintiff is entirely conclusory as he provides no evidence that "but for" this motive, he would have been subjected to being housed in the mental health unit or a delay in seeing a doctor.  Plaintiff admits that he was placed in mental health because he was accused of sleeping in his mattress and trying to harm himself.  He also admits that he was told that there was a backlog to see the

doctor.  Accordingly, these actions by prison officials do not implicate any constitutional rights and his claim should be dismissed as frivolous.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed.  See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985).  District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact.  See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

For the reasons heretofore stated, it is recommended that Plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e).  It is further recommended that Plaintiff's motion for service [Doc. 41] be **DENIED**.

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof.

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party.  See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 27th day of May, 2015.

Mark L. Hornsby
U.S. Magistrate Judge